# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| **DAWN WILSON,** | ) | Case No. 2:14-cv-3209-TLW-MGB |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **Commissioner of Social** | ) | |
| **Security Administration,** | ) | |
| _____ | ) | |

Claimant Dawn Wilson ("Wilson"), through counsel, seeks judicial review of the Commissioner's final administrative decision denying her application for a period of disability and disability benefits ("DIB") under Title II of the Social Security Act ("SSA"). See Section 205(g) of the SSA, as amended, 42 U.S.C. § 405(g). This matter was referred to the Magistrate Judge pursuant to Local Rule 73.02(B)(2)(a) and 28 U.S.C. § 636(b)(1)(B). Having considered the record, including the administrative decision, the parties' briefs, and applicable authority, the Magistrate Judge recommends that the Commissioner's final decision be **remanded**, based on the following proposed findings of fact and conclusions of law:

## I. Relevant Statutory Law

The SSA provides that disability benefits are available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). For purposes of the statute, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set forth a

five-step sequential process that considers a claimant's age, education, work experience, and medical condition. 20 C.F.R. §§ 404.1520(a). To be entitled to benefits, the claimant "(1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The claimant bears the burden of production and proof through the fourth step. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993). At step five, the burden shifts to the Commissioner "to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Id*. In the present case, the ALJ determined that Wilson was not disabled at step five of the sequential process.

## II.  Factual Background and Procedural History

The relevant facts have been set forth in detail in the ALJ's decision (AR 10-31) and need only be summarized here: Wilson was born December 22, 1972 (a "younger" individual) and had insured status through December 31, 2015. (AR 12, 30). She is literate and communicates in English. (AR 30, 133). She completed over four years of college, has "at least a high school education," and obtained certifications as a medical assistant and as a nursing assistant (certification completed in 2003-2005). (AR 134-35). She is married with three children (ages 12, 13, and 18). She lives with her husband and minor children.

Wilson has past relevant work experience, including as a supervisor/vocational trainer for the Greenville County Disability Board (2005-2010), as a medical assistant for a doctor's office (2004), as a medical records technician for the North Hills Medical Center (2001-2002), and as head bookkeeper/cashier for a Winn Dixie grocery store (1996-2001). (AR 15, citing Ex. 5F; AR

135). These jobs were performed primarily at the light exertional level and were classified as either "semi-skilled" or "skilled." (AR 75-76).

Wilson's reported activities of daily living include shopping (three times per week for 30-40 minutes), driving, preparing meals, making beds, doing laundry and other housework, watching television, mowing the lawn (1-2 rounds on a riding mower), and doing hobbies such as sewing and gardening. She walks short distances for exercise. (AR 27; Ex. 10E). She takes care of her two minor children (including an autistic son) and a pet without assistance. (AR 254). She has a driver's license and drives her children to school and events. She indicates that she likes to attend movies, church, and sporting events, watch her children in the marching band, read, and visit relatives in Abbeville, South Carolina (60 miles from her home). (AR 27, 164-173). She is able to take care of her own hygiene and manage her own finances.

On March 16, 2011, she protectively filed an application for a period of disability and disability insurance benefits ("DIB"), alleging disability due to fibromyalgia, with an alleged onset date of February 22, 2009. (AR 104, 134). She indicated in her application that "I have not filed nor do I intend to file for any Worker's Compensation…" (*Id*.). She amended her application to acknowledge that she had been "receiving Worker's Compensation." [1] The record indicates she had filed several Worker's Compensation claims for injuries that occurred on July 20, 2009 and April 27, 2010, and had received a settlement on December 21, 2010 in the amount of $6,000.00. (AR 18-19, 111-112). When she amended her application for DIB benefits, she changed her alleged disability onset date to April 27, 2010, the date of her work-related shoulder injury ("strain"). (AR 108). She stopped working on that date.

---

[1] In a telephone interview on March 17, 2011, the Social Security interviewer recorded that Wilson had "no difficulty" concentrating or answering questions. (AR 131).

The DIB application asks the claimant to list "all physical or mental conditions … that limit your ability to work" (AR 134, "Disability Report Form"). Wilson listed only "fibromyalgia." In a telephone conversation on July 13, 2011 with a state agency representative, she indicated that her Worker's Compensation injuries had "resolved" and repeated that "the only thing that she has that she wants evaluated for her disability is fibromyalgia." (AR 19, citing Ex. 6E). Her complaints and treatment for fibromyalgia-related symptoms first began in 2011 and consisted of medication and stretching exercises. (AR 17).

Claimant's application was denied initially and on reconsideration. She requested a hearing. To more fully develop the record, Administrative Law Judge Gregory Wilson ("ALJ") ordered a physical evaluation by consulting examiner Dr. Marcia Oliver, M.D. (Ex. 2F).[2] Based on a reference in the medical notes to a self-reported panic attack, the ALJ also ordered a mental evaluation by a consulting examiner psychologist Dr. Robin Moody, PhD. (Ex. 5F).[3] The ALJ also obtained physical RFC assessments by two state agency physicians: Dr. Robert Heilpern, M.D. (Ex. 7 F) and neurologist Dr. Hugh Clarke, M.D. (Ex. 3F). Both indicated that the claimant was capable of medium work.[4] The ALJ also obtained a mental RFC assessment by state agency psychiatrist Dr. Robert Estock, M.D. (Ex. 8F). In the mental RFC assessment, Dr. Estock checked

---

[2] On June 28, 2011, Dr. Oliver examined Wilson and observed that although Wilson reported some "pain," she had full range of motion, with normal gait and station. Dr. Oliver indicated that Wilson's complaints did not clearly meet "diagnostic criteria for fibromyalgia" and observed that such condition had not been confirmed by a rheumatologist.

[3] On November 1, 2011, Dr. Moody evaluated Wilson and assessed that Wilson's concentration was "moderately impaired," but that her "pace and persistence are adequate." (AR 239, noting that Wilson took "Adderall" for concentration issues). The ALJ noted that the claimant told her family physician that the "Adderrall helps a lot." (AR 24).

[4] Medium work would include lifting and carrying fifty pounds occasionally and twenty-five pounds frequently, pushing and pulling on an unlimited basis, and sitting, standing, and walking for six hours during an eight hour work day. 20 C.F.R. § 404.1567(c).

only boxes indicating "not significantly limited" or "moderately limited." He found no "marked limitations."[5] In a narrative paragraph, Dr. Estock indicated that the claimant "can maintain attention well enough to complete a 2/8 hour workday given the customary work breaks," but also suggested that "she may need a flexible schedule." (AR 266).

Wilson submitted records from her family physician Dr. Gary Sellman, M.D., including office records (Exs. 1F, 4F, 11F, 12F), an incomplete "Fibromyalgia RFC Questionnaire" (Ex. 10F, dated 10-18-2011), and a page with four questions about fibromyalgia and check-the-box answers. (Ex. 13F, dated 10-25-2012). She also submitted records from one visit on May 3, 2012 to her gynecologist Dr. Carrie Twedt, M.D. (Ex. 9F) and a "3rd Party Function Report – Adult" completed by family member Joan Kellett. (Ex. 11E).

The ALJ held a hearing on November 6, 2012, at which Wilson (represented by legal counsel) and a vocational expert ("VE") both testified. (AR 49-81, Hrg. Transcript). The ALJ posed a hypothetical question to the vocational expert ("VE"), asking the VE to assume an individual with the same age, education, and work experience as the claimant, and to:

> "Further assume this individual can lift 50 pounds occasionally, 25 pounds frequently; stand six of eight hours; walk six of eight hours; and sit six of eight hours; ropes, ladders, scaffolds, and hazards would be never; climbing, balancing, stooping, kneeling, crouching, and crawling would be frequent. This individual could do simple, one, two-step tasks; and require a low-stress work environment. Low stress is not a functional term – to put it in functional terms – to avoid the stress. It would be non-production work. And again, non-production, I'm talking about an assembly line, where one would have to produce a product in a high-speed manner. I recognize every job requires production, and what I'm specifically talking about is some high-speed type of production, like on an assembly line.

---

[5] The pre-printed form for "Psychiatric Review Technique" included a box for "mild" degree of limitation (AR 252). The pre-printed form for "RFC Assessment" did not include such box. (AR 265, Ex. 8F). On the RFC form, the reviewer can check "not significantly limited" or the next level "moderately limited."

(AR 76). The VE testified that Wilson could perform cleaner "unskilled, medium" jobs such as industrial, order-filler, day worker/cleaning crew (totaling over 16,000 jobs in South Carolina, and over one million jobs nationally). The ALJ also asked a second more-restrictive hypothetical question that was not adopted. (AR 77, asking the VE to assume frequent "absences from the workstation"). The ALJ issued a decision on March 15, 2013.

Specifically, the ALJ found that the claimant had "severe" impairments due to fibromyalgia and a panic disorder, but that these impairments, either singly or in combination, did not meet or exceed the criteria for any Listing. (AR 12-16, ¶¶ 3-4). He explained numerous reasons for finding Wilson's allegations of pain and functional limitations to be "less than fully credible." (AR 17-18).[6] After a lengthy discussion of the medical and opinion evidence, the ALJ found that:

> the claimant has the [RFC] to perform medium work… except because of her fibromyalgia she can only frequently balance, stoop, kneel, crouch, crawl and climb, but can never climb scaffolds, ropes or ladders. Because of her mental impairments, she is limited to simple one-two step tasks in a low stress work environment, i.e. non-production work, no assembly line production, or high speed manner.

(AR 17-30, ¶ 5). The ALJ found that Wilson could not perform her past work, but that "considering the claimant's age, education, work experience, and [RFC], there are jobs in the national economy that the claimant can perform." (AR 30, ¶¶ 6-10). He concluded that Wilson was not disabled from the alleged onset date through the date of decision. (AR 31). The Appeals Council denied review, and the ALJ's decision is the Commissioner's final decision. (AR 1-3).

---

[6] For example, the ALJ observed that despite an alleged onset date of April 27, 2010, Wilson did not seek medical care from her long-time family doctor Dr. Sellman M.D. until March 2011 when she filed for disability benefits. (AR 19). The ALJ aptly observed that "given that the claimant's alleged onset date is the same date a[s] the second [Worker's Compensation] injury, i.e. April 27, 2010, the medical record here is notable for the absence of any related medical evidence." (*Id*.). The ALJ observed that Dr. Sellman's notes indicate that Wilson "told him that her condition 'meets (illegible) definition of fibromyalgia," even though the doctor "did no examination" at that time. (*Id*., citing Ex. 1F/9). The ALJ appropriately found "this history particularly troubling."

### III. Standard of Review

The Court's review of the Commissioner's final decision is limited to: (1) whether substantial evidence supports such decision; and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401); *Hunter*, 993 F.2d at 34 (same). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 637–38 (4th Cir. 1996).

The court may not re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. It is the duty of the Commissioner, not the courts, to make findings of fact and resolve conflicts in the evidence. *Id*. at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("the court does not find facts or try the case *de novo* when reviewing disability determinations"). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### IV. Discussion

In her brief, Wilson argues that the ALJ's decision was "based on an incomplete and inaccurate assessment" of her RFC. (DE# 10 at 2, 12-16). She points to the narrative paragraph in Dr. Estock's RFC assessment, where he indicated his opinion that Wilson may need a "flexible schedule." (*Id*. at 13, citing AR 266). She argues that the ALJ indicated he was giving Dr. Estock's assessment "significant weight" but that the ALJ's decision does not reflect that he "properly

considered" such evidence. (*Id*. at 13-14). She also urges that her physician's notes indicated she would have "good days and bad days," and that the ALJ should have discussed this evidence of "intermittent limitations." [7]

In response, the Commissioner pointed to the ALJ's discussion of the evidence (or lack thereof) regarding the claimant's alleged mental impairment (DE# 11 at 10-11). The Commissioner concluded that "the ALJ's finding that Plaintiff was limited to only simple one-two step tasks in a low stress work environment sufficiently captured Plaintiff's credible limitations in concentration, persistence, or pace." (DE# 11 at 12). While this conclusion was correct under existing case law when made, it is no longer correct under the subsequent decision by the Fourth Circuit Court of Appeals in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).

After the *Mascio* decision was published, Wilson filed her reply brief. She specifically points to the *Mascio* decision and argues that it requires remand because the ALJ's RFC treatment of her assessed deficiencies in concentration, persistence or pace was inadequate. (DE# 12). The Commissioner did not seek to further respond post-*Mascio*.

In *Mascio*, the Fourth Circuit Court of Appeals held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638. The Fourth Circuit Court of Appeals distinguished the "ability to perform simple tasks from the ability to stay on task," and explained that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Moderate limitations in concentration, persistence, and pace are not adequately accounted for in the RFC by only limiting the claimant to "simple, routine

---

[7] Wilson also argued that the ALJ did not include "significant limitations resulting from Foster's medications" or "provide an adequate discussion rejecting those limitations." (DE# 10 at 2, 10). As the claimant's last name is Wilson, the references to "Foster" are likely scrivener's errors.

tasks or unskilled work." *Id*. Thus, a case must be remanded pursuant to *Mascio* when: 1) a finding of mental limitation in concentration, persistence, or pace is not reflected in the RFC; 2) the mental limitation was not incorporated into the hypothetical given to the VE; and 3) the ALJ did not sufficiently explain the exclusion of such mental limitation.

Under these criteria, the present case should be remanded for a new hearing. While the ALJ did refer to "non-production pace" in his formulation of Plaintiff's RFC, the only RFC restriction flowing from Plaintiff's mental limitations is the restriction to "simple one-two step tasks in a low stress work environment, i.e. non-production work, no assembly line production, or high speed manner." (AR 17, ¶ 5). Standing alone, this does not account for a limitation in concentration, persistence or pace. *Mascio*, 780 F.3d at 638; and *see, e.g., Neely v. Comm'r,* Case No. 1:14–cv–01109–TLW-SVH, 2015 WL 3536690, *12 (D.S.C.) (remanding case based on *Mascio*). The Magistrate Judge recommends remand for further proceedings and explanation, consistent with *Mascio*. As the Fourth Circuit Court of Appeals observed, on remand, the ALJ will have the opportunity to "explain why [claimant's] moderate limitation in concentration, persistence or pace ... does not translate into a limitation in [her] residual functional capacity." *Mascio*, 780 F.3d, at 638.

## V. Recommendation

Accordingly, the Magistrate Judge recommends that pursuant to this Court's authority to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), this case should be **REMANDED** to the Commissioner for further administrative proceedings and development.

January 15, 2015  
Charleston, South Carolina

_____  
MARY GORDON BAKER  
UNITED STATES MAGISTRATE JUDGE